UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JORGE FLORES,

       Plaintiff,

       v.

RMA RECOVERY GROUP LLP, *et al.*,

       Defendants.

17-CV-402-LJV
DECISION & ORDER

---

## INTRODUCTION

On May 10, 2017, the plaintiff, Jorge Flores, filed a complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, *et seq.* Docket Item 1. After the defendant, RMA Recovery Group LLC ("RMA Recovery"), failed to appear and defend this action, and after the time to do so expired, Flores asked the Clerk of the Court to enter a default against RMA Recovery.[1] *See* Docket Item 8. That default was entered on December 11, 2018. Docket Item 9.

On April 15, 2019, Flores filed an amended complaint adding Kenneth Thomas as a defendant.[2] Docket Item 12. Thomas also failed to appear and defend the action,

---

[1] The complaint also named defendants Doe 1-5; after Thomas was added as a defendant, the amended complaint named Doe 1-4. *See* Docket Items 1, 12. Flores voluntarily dismissed his claims against defendants Doe 1-4 on September 16, 2020. Docket Item 18.

[2] For purposes of this motion for a default judgment, the amended complaint is the operative complaint even though it was filed after RMA Recovery was in default. Because the amended complaint did not assert any new claims, Flores was not required

and after the time to do so expired, Flores asked the Clerk of the Court to enter a default against Thomas. *See* Docket Item 15. That default was entered on December 5, 2019. Docket Item 16.

On September 16, 2020, Flores moved for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking $2,000 in statutory damages and $5,848.50 in attorney's fees and costs.[3] Docket Item 19. For the reasons that follow, this Court grants Flores's motion in part.

## **BACKGROUND**

Flores incurred consumer debt that the defendants sought to collect.[4] Docket Item 1 at ¶ 7. Toward that end, on May 10, 2016, the defendants began leaving voicemail messages for Flores. *Id.* at ¶¶ 7-8. The first message stated:

> This is for Jorge Pena Flores. My name is Greg Owens of Legal Outsourcing. Sir, I have been appointed to a legal complaint which if not addressed can be filed in the Alameda County courts of possible charges against you. It is imperative that you contact my office at 855-266-8150. That's 855-266-8150. And when calling, refer to reference number 865912.

---

to serve the amended complaint on RMA Recovery. *See* Fed. R. Civ. P. 5(a)(2). The amended complaint therefore became the operative pleading against RMA Recovery upon filing and against Thomas upon service. *See Allstate Ins. Co. v. Yadgarov*, 2014 WL 860019, at *6, *8 (E.D.N.Y. Mar. 5, 2014).

[3] The amended complaint also requested $2,155 in actual damages, s*ee* Docket Item 12, but the motion for a default judgment makes no such request, *see* Docket Item 19. Because Flores also did not provide any additional evidence—such as bank account statements, invoices, or even a declaration attesting to the cost—he apparently has abandoned his request for actual damages.

[4] On a motion for a default judgment, the court accepts as true the complaint's factual allegations, except those relating to damages, and draws all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

> That's 865912. The call is urgent and does require an immediate response. This is a pending legal matter. We are here to help you.

*Id.* at ¶ 8. The defendants left Flores an identical message on June 22, 2016. *Id.* at ¶ 9. The defendants did not provide Flores with debt validation information within five days of the May 10 message. *Id.* at ¶ 10.

"Increasingly harassed and concerned by" the phone messages, Flores retained counsel and pursued this action. *Id.* ¶ 11. On July 25, 2016, "staff from Centennial Law Offices called [855-]266-8150 and reached RMA Recovery." *Id.* at ¶ 12. RMA Recovery "informed Centennial Law Offices that they were calling [Flores] to collect an alleged debt for $314.98 and confirmed that no litigation was pending." *Id.* Flores "checked the applicable public records and found no registered fictitious business name or trade name of 'Legal Outsourcing' for RMA Recovery." *Id.* at ¶ 13.

After Flores commenced this action, he filed affidavits of service attesting that he served RMA Recovery on November 16, 2018, and Thomas on November 8, 2019. Docket Items 7, 14. Because neither RMA Recovery nor Thomas appeared or otherwise defended this action, Flores now seeks entry of a default judgment. Docket Item 19.

## **LEGAL PRINCIPLES**

### I.    **DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55 addresses defaults and default judgments. *See generally Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

3

enter the party's default."  Fed. R. Civ. P. 55(a).  If, as here, the plaintiff seeks a judgment for an amount other than a "sum certain," she then must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b).  That determination requires a multi-pronged analysis of: (1) liability, (2) equitable considerations, and (3) damages.  *See Randle v. AC Asset Servs. LLC*, 2020 WL 5757187, at *1 (W.D.N.Y. Sept. 28, 2020).  The Clerk of the Court previously entered a default against the defendants, Docket Items 9, 16, so the Court proceeds to the Rule 55(b) considerations.

When the Clerk of the Court has entered a default, that "does not mean that a default judgment is automatically warranted."  *Farrington v. Fingerlakes1.com, Inc.*, 2020 WL 7350336, at *2 (W.D.N.Y. Dec. 15, 2020) (citing *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015)).  To determine whether to enter a default judgment, courts first decide whether "liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Bricklayers*, 779 F.3d at 187 (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).  "[I]t [is] the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

Courts then consider whether equitable factors favor the entry of a default judgment.  "Court[s] [are] guided by the same factors [that] apply to a motion to set aside entry of a default."  *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011).  Those factors include "(1) whether the default was willful; (2)

whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96 (citations omitted).

Finally, if a court determines that entry of a default judgment is legally and equitably appropriate, it determines the amount of damages. Although a party's default "is deemed to constitute a concession of all well[-]pleaded allegations of liability," it "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1993). "The district court [therefore] must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "If . . . the amount of damages must be ascertained, the court may conduct a hearing or order a reference." *Enron*, 10 F.3d at 95 (citing Fed. R. Civ. P. 55(b)(2)).

"The dispositions of motions for . . . defaults judgments . . . are left to the sound discretion of a district court." *Id.* at 95. But as a rule, "defaults are generally disfavored and are reserved for rare occasions." *Id.* at 96; *cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (characterizing a default judgment as "the most severe sanction [that a] court may apply" and explaining that although "[a] motion to vacate a default judgment is addressed to the sound discretion of the district court, . . . [the Second Circuit] ha[s] expressed a strong preference for resolving disputes on the merits" (citations omitted)).

## II.    FDCPA

"In order to establish a claim under the FDCPA, the following elements must be present: (1) [the] plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must

5

arise out of transactions that are 'primarily for personal, family or household purposes'; (3) [the] defendant is a 'debt collector' as defined by the FDCPA; and (4) [the] defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity." *Wallace v. Manley Deas Kochalski, LLC*, 2013 WL 3338687, at *3 (W.D. Ky. July 1, 2013) (quoting *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012)).

### III. RFDCPA

"Like the FDCPA, the RFDCPA requires [a p]laintiff to prove four elements: (1) that [the p]laintiff is a 'debtor,' (2) that the debt at issue is a 'consumer debt,' (3) that [the d]efendant is a 'debt collector,' and (4) that the defendant violated one of the liability provisions of the RFDCPA." *Ansari v. Electronic Document Processing Inc.*, 2013 WL 4647621, at *11 (N.D. Cal. Aug. 29, 2013). Moreover, the RFDCPA incorporates much of the FDCPA, so "any conduct by a debt collector [that] violates the federal FDCPA[,] necessarily violates the [R]FDCPA as well." *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009)

## DISCUSSION

### I. FDCPA CLAIM

#### A. Liability

Flores argues that the defendants violated the FDCPA by failing to provide meaningful disclosure of their identity, including that the communications were from a debt collector; by failing to send required notices of debt collection; by falsely

6

misrepresenting their name; and by falsely threatening lawsuits.  *See* Docket Item 12 at 4-5 (citing 15 U.S.C. §§ 1692d(6), 1692e(5), (10)-(11), (14), 1692g).

Under section 1692d(6), "[a] debt collector may not . . . place[] telephone calls without meaningful disclosure of the caller's identity," including that the communications are from a debt collector and that the communications are being made in an attempt to collect a debt.  *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 949 (D. Minn. 2008) ("The relatively few courts construing [s]ection 1692d(6) in similar contexts have uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business.") (citations omitted).  Under 15 U.S.C. § 1962g, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing [certain information]."  And under section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The following conduct explicitly violates section 1962e:  "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* at § 1692e(10); "[t]he failure to disclose in the initial [oral] communication . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector," *id.* at § 1692e(11); and "[t]he use of any business, company, or organization

7

name other than the true name of the debt collector's business, company, or organization," *id.* at § 1692e(14).

Both a debt collection agency and an individual associated with it can be liable under the FDCPA.  "A high-ranking employee, executive, or director of a collection agency may fit within the statutory definition of a debt collector as long as the defendant was personally involved in the collection of the debt."  *Williams v. Prof'l Collection Servs., Inc.*, 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004); *see also Musso v. Seiders*, 194 F.R.D. 43, 47 (D. Conn. 1999) (finding that complaint adequately alleged that individual defendant who "knew of the allegedly unlawful procedures being used but nevertheless approved or ratified them" was a debt collector under the FDCPA). According to the amended complaint, Thomas is the "sole managing member of" RMA Recovery and is "responsible for the policies and procedures of the company, including those specifically giving rise to [Flores's] causes of action."  Docket Item 12 at ¶ 3. Taking the undisputed facts in Flores's amended complaint as true, the Court is satisfied that each defendant is a "debt collector" under the FDCPA and can be held liable as such.  The Court also is satisfied that Flores is a consumer and that his debt arises from personal, family, or household transactions.  *See id.* at ¶ 7 (explaining that the defendants sought to collect "consumer debt" owed by Flores).

Flores also has adequately alleged that the defendants' actions violated the FDCPA.  The voicemail messages Flores received did not identify and use the true name of the company calling, say that they were from a debt collector, or advise that they were made in an attempt to collect a debt; they therefore did not meaningfully disclose the caller's identity or provide other required information.  *See* 15 U.S.C. §§

8

1692d(6), 1962e(11), (14).  In fact, the defendants misrepresented RMA Recovery's name as "Legal Outsourcing" and falsely suggested that there was litigation pending against Flores.  *See id.* at §§ 1692e(5), (10), (14).  And the defendants failed to send the required follow-up notices to Flores as well.  *Id.* at § 1692g.  The defendants' liability under the FDCPA therefore is established.

### B.     Equities

The equities favor entry of a default judgment.  Because the defendants failed to appear or respond—despite being served with the complaint, *see* Docket Items 7, 14, and the motion for a default judgment, *see* Docket Item 19 at 5—the default appears willful.  Not awarding a default judgment certainly would prejudice Flores.  And, at least on the face of the complaint, there appear to be no meritorious defenses to Flores's claims.  The Court therefore turns to the issue of damages.

### C.     Damages

Under the FDCPA, the Court may award a plaintiff up to $1,000 in statutory damages.  15 U.S.C. § 1629k(a)(2)(A).  Proof that the statute was violated warrants damages, "although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling."  *Savino v. Comput. Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

In calculating an appropriate award of statutory damages, courts consider relevant factors such as the frequency, persistence, nature, and intentionality of noncompliance by the debt collector.  15 U.S.C. § 1692k(b)(1).  Awards of the $1,000 statutory maximum are rare and "are typically granted [only] in cases where a defendant's violations are 'particularly egregious or intimidating.'"  *Carbin v. N.*

9

*Resolution Grp., LLC*, 2013 WL 4779231, *2 (W.D.N.Y. Sept. 5, 2013) (quoting *Cordero v. Collection Co.*, 2012 WL 1118210, *2 (E.D.N.Y. Apr. 3, 2012)).

The amended complaint alleges that Flores received two voicemails over the course of two months. Docket Item 12 at ¶¶ 8-9. Given the circumstances, the Court finds that $250—not $1,000 as requested—is an appropriate award. *See, e.g.*, *Fajer v. Kaufman, Burns & Assocs.*, 2011 WL 334311, at *3 (W.D.N.Y. Jan. 28, 2011) (deeming $1,000 "excessive" where the defendant made numerous calls to the plaintiff's home and workplace and made empty threats of litigation); *Twarozek v. Midpoint Resolution Group, LLC*, 2011 WL 3440096, at *4 (W.D.N.Y. August 8, 2011) (awarding $250 for violation consisting of one improper telephone call made by defendant in addition to its improper disclosure of information to a third party and false representations); *Estay v. Moren & Woods, LLC*, 2009 WL 5171881 at *2 (W.D.N.Y. Dec. 22, 2009) (awarding the plaintiff $250 where the defendant made harassing calls on more than one occasion, made empty threats of litigation, and improperly disclosed information about the plaintiff's debt to a third party); *cf. Hance v. Premier Recovery Group, Inc.,* 2013 WL 85068, *2 (W.D.N.Y. January 7, 2013) (awarding $500 where the defendant called the plaintiff's home more than twenty times per month). The Court therefore awards Flores $250 under the FDCPA.

## II.  RFDCPA CLAIM

### A.  Liability

Flores argues the defendants also violated the RFDCPA by failing to disclose in the voicemail messages that the communications were from a debt collector. Docket Item 12 at ¶19 (citing Cal. Civ. Code §1788.11(b)).

10

Section 1788.11(b) of the RFDCPA prohibits a debt collector from collecting or attempting to collect a consumer debt by "[p]lacing a telephone call without disclosing the caller's identity." Cal. Civ. Code § 1788.11(b).  An employee of a licensed collection agency, however, "may identify oneself by using their [sic] registered alias name if they [sic] correctly identify the agency that they [sic] represent." *Id.*  As under the FDCPA, individuals also can be liable under the RFDCPA.  *See Robinson*, 654 F. Supp. 2d at 1060 n.8 ("Because employees of a debt collection corporation may be held personally liable as debt collectors under the federal FDCPA[,] . . . employees may similarly be held liable under the [R]FDCPA.").

Because the defendants violated the FDCPA, *see supra*, they also violated the RFDCPA, *see Robinson*, 654 F. Supp. 2d at 1060.  The defendants did not disclose the true name of the debt collection company, that the communications were from a debt collector, or that the communications were being made in an attempt to collect a debt. *See* Cal. Civ. Code § 1788.11(b).  Flores therefore has established the defendants' liability under the RFDCPA.

### B.     Equities

For the same reasons stated above in the context of Flores's FDCPA claim, the equities favor entry of a default judgment on Flores's RFDCPA claim.

### C.     Damages

Under the RFDCPA, a court may award a plaintiff up to $1,000 in statutory damages for a "willful[] and knowing[]" violation of the Act.  Cal. Civ. Code § 1788.30(b). "Remedies under the FDCPA and the RFDCPA are cumulative and penalties may be awarded under both statutes."  *Custer v. Cristo Armstrong Powers, Inc.*, 2020 WL

11

5223559, at *3 (C.D. Cal. July 7, 2020) (citing *Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1069 (9th Cir. 2011)).  For the same reasons noted above in the FDCPA context, the Court awards Flores $250 under the RFDCPA.  *See, e.g.*, *Bankston v. Phycom Corp.*, 2008 WL 4412252, at *3 (N.D. Cal. Sept. 25, 2008) (awarding $100 under the RFDCPA for "only one collection letter[] and thus one violation of [the RFDCPA]"); *cf. Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1077 (E.D. Cal. 2007) (awarding $1,000 under the FDCPA and "for the same reasons" awarding $1,000 under the RFDCPA).

### III.    ATTORNEY'S FEES AND COSTS

Under the FDCPA, the court has discretion to award reasonable attorney's fees to successful litigants.  *See* 15 U.S.C. § 1692k(a)(3).  A court should consider case-specific variables in setting a reasonable hourly rate, which in turn should be used to calculate the "presumptively reasonable fee."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The hourly rates charged in the reviewing court's district are presumptively the rates that the court should use.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009).  Therefore, this Court considers the prevailing market rate in the Western District of New York in determining a reasonable fee here.  *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (considering the market rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation").

In support of his motion, Flores submitted time records indicating that 17.74 hours were expended by his attorney, Robert Amador, Esq., and that 8.35 hours were

expended by a paralegal. Docket Item 19-6. The requested hourly rate for Amador is $300 (totaling $5,322), and the requested hourly rate for the paralegal is $50 (totaling $417.50). Docket Item 19-5 at 3. Amador has "represented hundreds of consumers" in FDCPA cases "throughout California and in federal courts across the country." *Id.* The declaration supporting Flores's motion for attorney's fees does not indicate the level of experience of the paralegal who worked on the case.

Given recent case law in this district, the Court finds requested hourly rates to be reasonable for a lawyer of Amador's experience. *See, e.g.*, *Eades v. Kennedy, PC. Law Offices*, 343 F. Supp. 3d 104, 108 (W.D.N.Y. 2018) (awarding hourly rate of $300 for experienced FDCPA attorneys). And regardless of the paralegal's experience, a rate of $50 per hour is reasonable as well. *See Langhorne v. Takhar Grp. Collection Servs., Ltd.*, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) (awarding hourly rate of $300 for Amador and $50 for his paralegal). The Court also finds the 26.09 hours of work to be reasonable. Using the $300 hourly rate for Amador and the $50 rate for the paralegal, this Court awards attorney's fees in the amount of $5,739.50.[5] The Court also awards the requested $106 in costs.

## ORDER

In light of the above, IT IS HEREBY

---

[5] Flores requested $5,742.50. Docket Item 19 at 14. The $3 difference appears to result from minor mathematical errors in calculating three time-sheet entries: Amador's 0.33 hours of work should have totaled $99, not $100; his 1.33 hours of work should have totaled $399, not $400; and his 2.33 hours of work should have totaled $699, not $700.

ORDERED that Flores's motion for a default judgment, Docket Item 19, is granted in part; and it is further

ORDERED that Flores is awarded $250 in statutory damages under the FDCPA and $250 in statutory damages under the RFDCPA, for a total of $500 in statutory damages; and it is further

ORDERED that Flores is awarded $5,739.50 in attorney's fees and $106 in costs; and it is further

ORDERED that the Clerk of the Court shall enter judgment against the defendants in the amount of $6,345.50; and it is further

ORDERED that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  April 22, 2021
        Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE